Filed 4/24/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MARINA PACIFICA HOMEOWNERS ASSOCIATION, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> SOUTHERN CALIFORNIA FINANCIAL CORPORATION, <br><br> Defendant and Respondent. | B270580 <br><br> (Los Angeles County Super. Ct. No. NC052700) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael P. Vicencia, Judge. Affirmed.

Locke Lord, Christopher J. Bakes, Daniel A. Solitro, Susan Kidwell; Morrison & Foerster and Miriam A. Vogel for Plaintiff and Appellant.

Greenberg Traurig, Scott D. Bertzyk, Adam Siegler and Matthew R. Gershman for Defendant and Respondent.

_____

# SUMMARY

Since January 1, 2008, Civil Code sections 1098 and 1098.5 have governed the circumstances under which certain fee payments, imposed when real property is transferred, may or may not be collected.[1]  In *Marina Pacifica Homeowners Assn. v. Southern California Financial Corp.* (2014) 232 Cal.App.4th 494 (*Marina Pacifica I*), this court determined that a monthly "assignment fee," payable by individual condominium unit owners to the developers of the condominium project, was properly collectible under those statutory provisions.  The Supreme Court denied review.  Our remittitur issued on April 22, 2015, remanding the case to the trial court for "further proceedings as necessary to enter an amended judgment consistent with [our] opinion," including "amended amounts due and owing for the assignment fee."  (*Id.* at p. 513.)

Marina Pacifica Homeowners Association (plaintiff) now appeals from the trial court's judgment determining the amended amounts owing from unit owners to the developers' successor in interest, Southern California Financial Corporation (defendant), for the assignment fee.  Plaintiff does not contend the trial court erred in its calculations, but contends we erred in our earlier construction of the statute, and should now correct that error and declare the assignment fee uncollectible.  Our error is demonstrated, plaintiff maintains, by the Legislature's clarifying amendment of sections 1098 and 1098.5, effective January 1, 2016, an amendment intended to overrule our decision in *Marina Pacifica I*.

---

[1]     All further statutory references are to the Civil Code.

2

We affirm the judgment.  We need not decide whether we could properly reconsider our decision in *Marina Pacifica I*, because the amended statute and its legislative history demonstrate the Legislature intended in any event to permit the *Marina Pacifica I* assignment fees to remain in place.

## FACTS

This is the fourth appeal in litigation over the assignment fee that began in 2006.  Only two appeals are significant here: the appeal before us and our decision in *Marina Pacifica I* upholding the collectibility of the assignment fee.[2]  The history of the dispute is described in detail in *Marina Pacifica I, supra,* 232 Cal.App.4th at pages 497-504.  We summarize here the facts necessary to an understanding of our opinion in this appeal.

When unit owners purchased their units in the Marina Pacifica complex, they bought an ownership interest in their individual units and a share of an undivided leasehold interest in the land on which the complex was built.  That leasehold interest included the obligation to pay monthly rent to the landowner and an assignment fee to the developers.  These two obligations were to continue until 2041.  Both payments were to be nominal until 2006, when the rent and assignment fee would be recalculated so

---

[2]    The first appeal concerned the process for selection of an appraiser to determine the fair market value of the property for purposes of adjustment of the assignment fees in 2006.  (*Lansdale v. Marina Pacifica Homeowners Assn.* (Aug. 14, 2007, B192520) [nonpub. opn.].)  A third appeal (after our decision in *Marina Pacifica I*) dealt primarily with issues of costs and attorney fees.  (*Marina Pacifica Homeowners Assn. v. Southern California Financial Corp.* (March 4, 2016, B255413 & B256664) [nonpub. opn.].)

3

that together they would equal 10 percent (on an annual basis) of the fair market value of the land underlying the units. (*Marina Pacifica I, supra,* 232 Cal.App.4th at pp. 497-498.) Another recalculation would occur as of October 1, 2021. These assignment fee provisions were described in the unit lease, and an information sheet plaintiff gave to each purchaser of a unit in the complex stated that the fee would be readjusted in 2006 and 2021. The parties stipulated at trial that "each purchaser of a Marina Pacifica unit had notice of the unit lease and its contents, including the specific paragraph setting forth the assignment fee." (*Id.* at p. 499.)

In 1999, plaintiff bought the land underlying the development and sold pro rata shares to the individual unit owners, thus terminating rent payments under the unit leases. The assignment fee, however, was separate and independent from the other lease provisions, and created a separate contractual obligation from the unit owner to the developers. (*Marina Pacifica I, supra,* 232 Cal.App.4th at pp. 499, 498.)

In 2000, plaintiff bought out the assignment fee rights of two of the three development partners. But the remaining partner, William Lansdale, retained his 43.75 percent interest in those fees. In 2005, Mr. Lansdale and plaintiff began to litigate disputes over the appraisal process that would determine the fair market value of the property for purposes of readjustment of the assignment fee. (*Marina Pacifica I, supra,* 232 Cal.App.4th at p. 499.)

In 2007, the Legislature enacted sections 1098 and 1098.5 to regulate "transfer fees." A transfer fee was defined broadly to include fees imposed in any document affecting the transfer of an interest in real property. For transfer fees imposed before

4

January 1, 2008, the recipient of the fee was required to record a separate document meeting specified requirements, including a title ("Payment of Transfer Fee Required") and certain items of information about the fee. In order to continue collecting transfer fees on and after January 1, 2009, this separate document had to be recorded on or before December 31, 2008. (§ 1098.5, subd. (a).)

There were, however, nine exceptions to the definition of a transfer fee. One of the fees not included in the statutory definition was "[a]ny fee reflected in a document recorded against the property on or before December 31, 2007, that is separate and apart from any covenants, conditions, and restrictions, and that substantially complies with subdivision (a) of Section 1098.5 [recited just above] by providing a prospective transferee notice" that payment of a transfer fee was required, the amount or method of calculation of the fee and several other items. (Former § 1098, subd. (i).)

In January 2008, Mr. Lansdale transferred his right to the assignment fees to defendant. By December 2008, the appraisal litigation had been concluded, an arbitration had been held, and the fair market value of the property for purposes of calculating the assignment fee was set at $60,615,500 (as of October 1, 2006). Defendant then began billing the unit owners for their respective shares of the readjusted assignment fee. (*Marina Pacifica I, supra,* 232 Cal.App.4th at p. 500.) Defendant did not record the separate document described in section 1098.5.

Plaintiff instructed unit owners not to pay the assignment fee bills defendant sent, and in March 2009 plaintiff sued defendant. Along with other allegations, plaintiff asserted the assignment fee was a transfer fee as defined by section 1098, and could not be collected after December 31, 2008, because

5

defendant did not comply with the recording requirements in section 1098.5. The trial court agreed, and also held that the fees imposed before that date should have been calculated under a four-percent formula advocated by plaintiff, rather than the higher 10-percent formula sought by defendant.

Both parties appealed. In *Marina Pacifica I*, we concluded the assignment fee came within the general definition of a transfer fee as described in the first sentence of section 1098, but was excluded from that definition by the "substantial compliance" exception described in then-section 1098, subdivision (i). (*Marina Pacifica I, supra,* 232 Cal.App.4th at p. 509.) We observed that the unit lease contained all the required information and, while the unit lease itself was not recorded, numerous documents that were recorded against the property incorporated the unit lease by reference. (*Id.* at p. 510.) These included lease assignments and resale assignments that contained provisions in which the unit owners promised to pay the assignment fee set forth in paragraph 4 of the unit lease, and acknowledged they had received and reviewed the unit lease. (*Id.* at pp. 511-512.) We observed the evidence showed that "far from being hidden, the assignment fee was clearly disclosed to purchasers," who had both constructive notice and actual notice of the assignment fee. (*Id.* at p. 512.)

Accordingly, we reversed the trial court's judgment to the extent it held the assignment fee was an uncollectible transfer fee after December 31, 2008. (We agreed with the trial court that the four percent formulation should have been used to calculate the fees.) As already noted, we remanded the case to the trial court for "further proceedings as necessary to enter an amended judgment consistent with [our] opinion," including "amended

6

amounts due and owing for the assignment fee." (*Marina Pacifica I, supra,* 232 Cal.App.4th at p. 513.)

Our opinion in *Marina Pacifica I* was filed December 16, 2014. Plaintiff did not seek rehearing in this court, but petitioned for review in the California Supreme Court. The Supreme Court denied the petition on March 11, 2015, and the remittitur issued on April 22, 2015.

During 2015, legislation was enacted to amend section 1098, effective January 1, 2016. Among the changes were the addition of a new subdivision (b). Subdivision (b) provides, with respect to the substantial compliance exception to the definition of a transfer fee, that the specified information "shall be set forth in a single document and shall not be incorporated by reference from any other document." (§ 1098, subd. (b).) The bill as enacted included a legislative finding that "the addition of subdivision (b) to Section 1098 . . . and [other specified amendments] . . . made by this act are clarifying and declaratory of existing law." (Stats. 2015, ch. 634.)

The amendments as enacted also added a new subparagraph to the substantial compliance exception. (§ 1098, subd. (a)(9)(B).) We will refer to it as the savings clause. This new provision stated:

> "(B) A fee reflected in a document recorded against the property on or before December 31, 2007, that is not separate from any covenants, conditions, and restrictions, or that incorporates by reference from another document, is a 'transfer fee' for purposes of Section 1098.5. A transfer fee recorded against the property on or before December 31, 2007, that complies with subparagraph (A) [the substantial compliance exception] and incorporates by reference from

7

another document is unenforceable *unless* recorded against the property on or before December 31, 2016, in a single document that complies with subdivision (b) and with Section 1098.5." (§ 1098, subd. (a)(9)(B), italics added.)

The legislation producing these amendments appeared on the "consent calendar" in both the Assembly and the Senate, was approved unanimously in committees and by both chambers, and was signed by the Governor on October 8, 2015.

Meanwhile, after our remittitur issued in April 2015, a referee was appointed to make recommendations to the trial court as to amounts owing and the proposed form of judgment. Two weeks after the Governor signed the legislation amending section 1098, plaintiff filed an ex parte motion to recall the referee and to brief the impact of the legislation on the case.

The trial court permitted briefing, and plaintiff argued that, in light of the amendments that would become law on January 1, 2016, the court should enter an amended judgment finding the assignment fees became uncollectible on January 1, 2009. The trial court declined to do so.

On December 28, 2015, the court entered a 97-page final judgment determining the assignment fee obligations of the individual unit owners in accordance with our remittitur. The judgment stated the legislation was adopted "after the Court of Appeal Opinion was rendered in this case and the cause was remanded back to this Court to enter an amended judgment consistent with that Opinion," and the court therefore "does not purport to interpret or apply AB 807 to this Judgment."

Plaintiff filed a timely appeal.[3]

---

[3] After briefing and before oral argument, defendant filed a motion for judicial notice of legislative materials concerning the

## DISCUSSION

Plaintiff asks us to reverse the trial court's judgment and direct entry of a new judgment declaring defendant cannot collect the assignment fees as of January 1, 2009. Plaintiff contends the Legislature found "that this Court got it wrong in *Marina Pacifica I*," and "there are no bars to this Court's right to take another look at sections 1098 and 1098.5 and to now reach the result the Legislature intended."

We conclude that "the result the Legislature intended" was that the Marina Pacifica assignment fees should remain in place, so long as defendant recorded a document reflecting the assignment fee, "in a single document that complies with subdivision (b) and with Section 1098.5," before December 31, 2016. The language of the savings clause supports our conclusion, and the legislative history of the amendments makes the Legislature's intent on this point unmistakable.[4]

We first describe that legislative history, and then briefly address certain of plaintiff's contentions.

---

recent introduction of a bill to further amend the transfer fee statutes. We deny the request because the materials are irrelevant to this case.

[4] At defendant's request, the author of the legislation amending sections 1098 and 1098.5 submitted a letter to this court concerning his view of the intent underlying the legislation. We rejected the filing, since statements by an individual legislator that were not communicated to the Legislature as a whole are not relevant to a determination of legislative intent, and we have not considered the letter for any purpose.

## 1. The Legislative History

To summarize, the legislative history demonstrates several salient points. First, the Legislature repeatedly stated it was clarifying the law with respect to the prohibition on incorporation by reference, and that its intent in the 2007 law had been to require a separate document. (E.g., Assem. Com. on Judiciary, Analysis of Assem. Bill No. 807 (2015-2016 Reg. Sess.) as amended Apr. 8, 2015, pp. 5-6 (Assembly Analysis of Assembly Bill 807).)

Second, the Legislature recognized that *Marina Pacifica I* was a final decision when the California Supreme Court declined to review it, and understood there was no pending litigation. (Assem. Analysis of Assem. Bill 807, *supra*, at p. 5 ["(It should be noted that in March 2015, the [California] Supreme Court declined to review the case, letting the Court of Appeal[] decision stand and effectively ending the litigation.)"].)

Third, as we explain further below, the Legislature intended the new law to overrule the holding in *Marina Pacifica I*, and expressly recognized that, despite its repeated statements that the bill would clarify existing law, "its provisions may attach new legal consequences to events completed before its enactment." (Sen. Com. on Judiciary, Report on Assem. Bill No. 807 (2015-2016 Reg. Sess.) as amended Apr. 8, 2015, p. 7 (Senate Report on Assembly Bill 807).) For that reason, the bill was amended in the Senate to include the savings clause.

In short, we are in no doubt the Legislature intended that the assignment fees we found enforceable in *Marina Pacifica I* were to remain enforceable if defendant recorded the necessary conforming documents during 2016. The pertinent details from the legislative history are as follows.

10

### a. The bill in the Assembly

When the legislation amending sections 1098 and 1098.5 was introduced (Assembly Bill No. 807 or AB 807), and when it was first voted on by the Assembly, it did not contain the savings clause.  The "key issue" addressed by AB 807 was described this way:

> "Should existing law be clarified to ensure that private transfer fees [(PTF's)] are always disclosed to prospective property buyers in a transparent and meaningful fashion, and that newly structured types of transfer fees do not circumvent current disclosure requirements?"  (Assem. Analysis of Assem. Bill 807, *supra*, at p. 1; see also Assem. Com. on Judiciary, Mandatory Information Worksheet on Assem. Bill No. 807 (2015-2016 Reg. Sess.) p. 1 [describing the author's view of the key issue raised by the bill as "[s]hould existing law requiring recordation and disclosure of private transfer fees (PTF) be updated to close a loophole that may be exploited by some developers to creatively structure PTFs to avoid disclosure requirements intended to protect homebuyers?"].)

It is helpful to bear in mind that this legislation (and the original statute) was directed at recording and disclosure of all transfer fees, not just those originating before the enactment of sections 1098 and 1098.5 in 2007.  Thus the Assembly's analysis explained that existing law "provides that when a PTF is imposed on real property on or after January 1, 2008, the person or entity imposing the transfer fee must, as a condition of payment of the fee, concurrently record against the property a separate document entitled 'Payment of Transfer Fee Required.' "  (Assem. Analysis of Assem. Bill 807, *supra*, at p. 1.)  The purpose of the

11

new bill was "to further the intent of AB 980 [(the 2007 law)] and ensure that all PTFs on real property continue to be recorded with the county and disclosed to prospective purchasers in a transparent manner." (*Ibid.*)

Further: "According to the author, this bill is needed to ensure continued notification and disclosure of PTFs to homebuyers because some PTFs are being structured differently since AB 980 became law in 2007. For example, these new types of PTFs may be structured so that they are not necessarily based on the sale price of the home or paid immediately upon transfer of the home, as was contemplated by AB 980. As a result, there may not be appropriate disclosure of all PTFs, contrary to the intent of existing law. To nip this potential problem in the bud, this bill does the following: (1) clarifies the definition of PTF to capture any fee that must be paid 'as the result of' the transfer of the property; (2) clarifies that the method of calculating the amount of the PTF is disclosed if the fee is neither a flat fee, nor a percentage of the sales price; and (3) clarifies that required disclosures about the PTF must appear in a single document and cannot be incorporated by reference into other documents. The bill provides that these changes are clarifying and declaratory of existing law. The bill . . . has no known opposition." [5] (Assem. Analysis of Assem. Bill 807, *supra*, at p. 1.)

---

[5] The Legislative Counsel's Digest for AB 807, as amended in the Assembly on April 8, 2015, describes existing law on pre-2008 transfer fees this way: "Existing law *excludes* from the definition of a transfer fee *any fee* reflected in a document recorded against the property on or before December 31, 2007, that is separate from any covenants, conditions, and restrictions, and *that provides a prospective transferee notice of specified information*, including the amount or method of calculation of the fee. [¶]

The Assembly's analysis refers to *Marina Pacifica I* as "illustrat[ing] the author's contention that existing law needs to be clarified to ensure that all private transfer fees are recorded and disclosed to prospective homebuyers. . . . [T]he case demonstrates that payment of a PTF: (1) did not have to occur upon transfer of the property, but could be required a number of years after the property had been transferred; and (2) did not have to be based on the sale price of the property, but could be in any amount or calculated by any other method. . . . [¶] Although the fee in *Marina Pacifica* was recognized as a PTF, the case illustrates that if these newly structure[d] types of PTFs are ever determined by other courts to fall outside the current statute, disclosure to prospective homebuyers is not necessarily assured." (Assem. Analysis of Assem. Bill 807, *supra*, at pp. 4-5.)

On May 11, 2015, the Assembly passed the bill unanimously and ordered it to the Senate.

### b. The bill in the Senate

The June 9, 2015 report prepared for the Senate Committee on Judiciary describes *Marina Pacifica I* at some length in connection with documents recorded before December 31, 2007. (Sen. Report on Assem. Bill 807, *supra,* at pp. 5-7.) Specifically:

First, the report observes that the bill would, "among other things, specify that, in order for a document recorded against a property on or before December 31, 2007, to be excluded from the definition of a 'transfer fee,' it must set forth specified

*This bill would specify* that the information shall be set forth in a single document and may not be incorporated by reference from any other document." (Legis. Counsel's Dig., Assem. Bill No. 807 (2015-2016 Reg. Sess.) as amended Apr. 8, 2015, p. 2, italics added.)

13

information about the fee in a single document and may not incorporate by reference such information from another document." (Sen. Report on Assem. Bill 807, *supra*, at p. 5.)

Second, the report describes the *Marina Pacifica I* litigation and our holding that the unit leases incorporated by reference in recorded documents contained all the information required to qualify under the statutory exemption at issue. The report then states: "By specifying that a recorded document providing notice of fees may not rely on other information incorporated by reference and still qualify under the statutory exemption, this bill seeks to overrule the holding in [*Marina Pacifica I*]. Furthermore, as a matter of policy, . . . requiring record documents to contain pertinent information about fees for which a prospective transferee will be responsible arguably provides better notice about the obligation the transferee will take on should they purchase or obtain the real property at issue." (Sen. Report on Assem. Bill 807, *supra*, at pp. 5-6.)

Third, the report then turns to a discussion of "retroactive application," stating: "This bill would find and declare that amendments made by it to existing law pertaining to transfer fees are clarifying and declaratory of existing law. However, as noted above, ***some of these amendments may substantively change the way existing law has been interpreted***, raising the possibility that they could be given retroactive application." (Sen. Report on Assem. Bill 807, *supra*, at p. 6, boldface and italics added.)

Fourth, after further discussion of judicial decisions on retroactivity and on legislation that merely clarifies existing law, the report concludes: "This bill contains express language indicating that its provisions are clarifying and declaratory of

14

existing law *irrespective of the fact that its provisions may attach new legal consequences to events completed before its enactment.  To ensure that fees reflected in documents recorded against a property on or before December 31, 2007, that do not comply with this bill's provisions do not become automatically uncollectable by this change in the law, the author offers the following amendment* that would allow a one-year time period for the separate recording of such fees."[6]  (Sen. Report on Assem. Bill 807, *supra*, at p. 7, boldface and italics added.)

The bill was amended accordingly on June 15, 2015, and again on September 3, 2015, and was passed by the Senate unanimously on September 8, 2015.

### c.    The Assembly's concurrence

The Assembly then concurred in the Senate amendments. A report from the Assembly Committee on Judiciary states:  "The Senate amendments clarify that any fee reflected in a document recorded against the property on or before December 31, 2007, . . . that incorporates by reference from another document constitutes a 'transfer fee,' and that any such transfer fee is unenforceable unless recorded against the property, in a single document, on or before December 31, 2016 (i.e. one year after the operative date of this bill, if enacted.)"  (Assem. Com. on Judiciary, Concurrence in

---

[6]    The amendment stated, "Any fee reflected in a document recorded against the property on or before December 31, 2007, . . . that incorporates by reference from another document shall constitute a 'transfer fee' for purposes of Section 1098.5, unless it is recorded against the property on or before December 31, 2016, in a single document that complies with subdivision (a)(9) and (b) of this section."  (Sen. Report on Assem. Bill 807, *supra*, at p. 7.)

15

Sen. Amends. to Assem. Bill No. 807 (2015-2016 Reg. Sess.) as amended Sept. 3, 2015, p. 1) (Concurrence in Senate Amendments).)[7]

The concurrence report further explains:  "With respect to any fee reflected in a document recorded against a property on or before December 31, 2007 that . . . incorporates by reference from another document, ***the Senate Judiciary Committee noted a concern that, when this bill goes into effect, such fees will cease to comply with the new law.  Accordingly, in order to ensure that such fees do not automatically become uncollectable overnight, recent amendments to the bill provide a one year time period for the separate recording of such fees, running from January 1, 2016 (the operative date of this bill, if enacted) until December 31, 2016.***" (Concurrence in Sen. Amends., *supra,* at p. 4, boldface and italics added.)

---

**7**    See also Legislative Counsel's Digest, Assembly Bill No. 807 (2015-2016 Reg. Sess.) as amended September 3, 2015, page 2 (italics and strikethroughs omitted) ("This bill would provide that a fee reflected in a document recorded against the property on or before December 31, 2007, that is not separate from any covenants, conditions, and restrictions, or that incorporates by reference from another document, constitutes a transfer fee for the purposes of requirements relating to these fees.  The bill would make unenforceable a transfer fee recorded against the property on or before December 31, 2007, that complies with the provisions described above and that incorporates by reference from another document unless it is recorded against the property on or before December 31, 2016, in a single document that complies with the provisions described above.").

16

On September 9, 2015, the Assembly concurred unanimously in the Senate amendments, and the bill was presented to and later approved by the Governor.

## 2. Contentions and Conclusions

In our view, the history we have recited leaves no room for doubt about the intention of the Legislature. In addition, the Legislature's intent that the assignment fees we found enforceable in *Marina Pacifica I* were to remain enforceable (if recorded during 2016) is entirely consistent with established legal principles on the finality of judgments, shown in the legislative history to be well understood by the Legislature.

As mentioned earlier, the Legislature was aware that the *Marina Pacifica I* decision on the enforceability of the assignment fees at issue there was final – the reports repeatedly said so.[8] We likewise cannot doubt the Legislature's recognition of the general principles governing final judgments and subsequent legislative actions that purport to change their legal effect; the Senate report shows that, too. (Sen. Report on Assem. Bill 807, *supra,* at pp. 6-7.) And, while there are exceptions to those finality principles, here the Legislature made plain it intended to adhere

---

[8] See Assembly Analysis of Assembly Bill 807, *supra*, at page 5 ("the [California] Supreme Court declined to review the case, letting the Court of Appeal[] decision stand and effectively ending the litigation"); Concurrence in Senate Amendments, *supra,* at page 3 (same); see also Assembly Committee on Judiciary, Mandatory Information Worksheet on Assembly Bill No. 807, *supra*, at page 3 (describing *Marina Pacifica I*'s discussion of the assignment fee as coming within the purview of the statute and stating that "the issue is now settled because the [California] Supreme Court has declined to hear an appeal").

17

to them.  (*Id.* at pp. 6, 7 [adding the savings clause because "some of these amendments may substantively change the way existing law has been interpreted, raising the possibility that they could be given retroactive application," and "[the bill's] provisions may attach new legal consequences to events completed before its enactment"]; Concurrence in Sen. Amends., *supra,* at p. 4 [providing one-year period for separate recording of pre-January 1, 2008 fees because "when this bill goes into effect, such fees will cease to comply with the new law"].)

   We recognize it is inconsistent to state, as the legislation and the legislative reports do, *both* that the amendments are "clarifying and declaratory of existing law" *and* that the amendments "may attach new legal consequences to events completed before [the bill's] enactment."  But the Senate report recognized that inconsistency, and the Legislature resolved it with the savings clause – a clause that would be entirely devoid of meaning if construed other than in accordance with its plain language.  In short, our role is to discern the Legislature's intent, not to substitute our judgment based on the inconsistencies, particularly since that intent – like the language of the savings clause itself – is plain.

   In view of the legislative history, little remains to be said about plaintiff's appeal from the trial court's judgment.  The trial court did not err, complying precisely with our remittitur in *Marina Pacifica I,* as it was required to do.  (See *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 774, fn. 5 ["The appellate court clerk's issuance of the remittitur effects the transfer of jurisdiction to the lower court.  [Citation.]  The reviewing 'court has no appellate jurisdiction over its own judgments, and it cannot review or modify them after the cause

18

has once passed from its control by the issuance of the remittitur' [citation] . . . . At the same time, the terms of the remittitur define the trial court's jurisdiction to act."].) Plaintiff does not question the calculation of amounts due from the unit owners to defendant. Consequently, there is no trial court error to review.

Plaintiff insists we have jurisdiction now to revisit our interpretation of the substantial compliance exception in *Marina Pacifica I*, and that we should do so in light of the amendments to sections 1098 and 1098.5, because the "overarching principle is to give effect to the Legislature's intent." That is exactly what we are doing. We have no reason to consider our authority to revisit *Marina Pacifica I*, because the Legislature has made clear it did not intend those amendments to interfere with the *Marina Pacifica I* judgment.

Accordingly, we give effect to the Legislature's intent and affirm the trial court's judgment.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.


GRIMES, J.


WE CONCUR:


BIGELOW, P.J.


RUBIN, J.

19